IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA BEHANNA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| ALLEGHENY COUNTY d/b/a ALLEGHENY | ) | |
| COUNTY JAIL; ORLANDO HARPER, | ) | |
| individually and in his official capacity; | ) | |
| LATOYA WARREN, individually and in her | ) | |
| official capacity; SIMON WAINWRIGHT, | ) | |
| individually and in his official capacity, JOSHUA | ) | |
| REBER, individually and in his official capacity; | ) | |
| JAMES MCGOVERN, JR., individually and in his | ) | |
| official capacity; ROBERT BENDER, individually | ) | |
| and in his official capacity; DANIELLE | ) | |
| RHOADES, individually and in her official | ) | |
| capacity; MATT OLEAN, individually and in his | ) | |
| official capacity; ALYSSIA TUCKER, individually | ) | |
| and in her official capacity; VERONICA BROWN, | ) | |
| individually and in her official capacity; | ) | |
| ANTHONY BERGER, individually and in his | ) | |
| official capacity; BRIAN O'NEIL, individually | ) | JURY TRIAL DEMANDED |
| and in his official capacity; KATIE THOM, | ) | |
| individually and in her official capacity; FRANK | ) | |
| MCDINE, individual and in his official capacity; | ) | |
| STEFAN PETTY, individually and in his official | ) | |
| capacity; and KENNETH RUBEL, individually | ) | |
| and in his official capacity, | ) | *Electronically filed* |
| | ) | |
| Defendants. | ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiff, Melissa Behanna, by and through her attorneys, Gesk

Moritz, LLC and Jonathan M. Gesk, Esquire, and Barth & Associates and Steve M. Barth, Esquire,

and brings this Complaint in Civil Action, and in support thereof alleges as follows:

1

JURISDICTION

1.       This action is brought pursuant to 42 U.S.C. § 1983 and the Eighth Amendment and Fourteenth Amendment to the United States Constitution.

2.       Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.

3.       Venue is proper as all claims set forth herein arose in the Western District of Pennsylvania and all parties reside in the Western District of Pennsylvania.

PARTIES

4.       Plaintiff, Melissa Behanna, is an adult resident of the Commonwealth of Pennsylvania.  Ms. Behanna at the time of the subject civil rights violations was serving a criminal sentence in Allegheny County Jail.

5.       At all times relevant hereto, the Defendant ALLEGHENY COUNTY, doing business as Allegheny County Jail, was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

6.       At all times relevant hereto, Defendant ORLANDO HARPER (hereinafter "DEFENDANT HARPER"), was the Warden of the Allegheny County Jail charged with the control and supervision of all correctional officers and/or employees, independent contractors, and/or persons employed/working within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all correctional officers, staff, personnel, independent contractors, and was responsible for the health and safety of inmates within the Allegheny County Jail.

2

7.      At all times relevant hereto, Defendant HARPER was responsible for creating and executing policies to ensure the safety, health, and availability and provision of care, custody and control of all inmates within the Allegheny County Jail.  Accordingly, Defendant HARPER was responsible for formulating and implementing correctional officer procedures to protect the safety, health, availability and/or provision of adequate care and custody to inmates.

8.      At all times relevant hereto, Defendant HARPER represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to all staff actions, including but not limited to, correctional officers' actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant HARPER acted under color of state law in those regards.

9.      At all times relevant hereto, Defendant LATOYA WARREN (hereinafter "WARREN"), was the deputy warden of the Allegheny County Jail charged with the control and supervision of all correctional officers employed within the jail.  As such, she was responsible for the training, supervision, direction, procedures and conduct of all staff, including but not limited to correctional officers, and was responsible for the health, safety, custody and control of inmates within the Allegheny County Jail.

10.     At all times relevant hereto, Defendant WARREN represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to correctional officers' duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant WARREN acted under color of state law in those regards.

11.     At all times relevant hereto, Defendant WARREN was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate care,

3

custody and control to all inmates within the Allegheny County Jail.  Accordingly, Defendant WARREN was responsible for formulating and implementing correctional officer procedures to protect the safety, health, availability and/or provision of adequate care, custody and control to inmates.

12.     At all times relevant hereto, Defendant SIMON WAINWRIGHT (hereinafter referred to as "Defendant WAINWRIGHT"), was the Deputy Warden of the Allegheny County Jail and acting under color of state law.  In his role as Deputy Warden, Mr. Wainwright was responsible for the training, supervision, direction, procedures and conduct of all correctional staff including but not limited to sergeants and guards, and was further responsible for the safety, health and general well-being of all inmates and detainees.

13.     At all times relevant hereto, Defendant WAINWRIGHT represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to correctional officers' actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant WAINWRIGHT acted under color of state law in those regards.

14.     At all times relevant hereto, Defendant WAINWRIGHT was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate care, custody and control to all inmates within the Allegheny County Jail.  Accordingly, Defendant WAINWRIGHT was responsible for formulating and implementing correctional officer procedures to protect the safety, health, availability and/or provision of adequate care, custody and control to inmates.

15.     Defendant, JOSHUA REBER (hereinafter referred to as "Defendant REBER"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of

4

state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

16.     Defendant, JAMES MCGOVERN, JR. (hereinafter referred to as "Defendant MCGOVERN"), was at all times relevant a Captain of the Allegheny County Jail and acting under color of state law.  In his role as Captain, Defendant MCGOVERN was responsible for the training, supervision, direction, procedures and conduct of all correctional staff including but not limited to sergeants and guards, and was further responsible for the safety, health and general well-being of all inmates and detainees.

17.     Defendant, ROBERT BENDER (hereinafter referred to as "Defendant BENDER"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

18.     Defendant, DANIELLE RHOADES (hereinafter referred to as "Defendant RHOADES"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

19.     Defendant, MATT OLEAN (hereinafter referred to as "Defendant OLEAN"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

5

20.     Defendant, ALYSSIA TUCKER (hereinafter referred to as "Defendant TUCKER"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

21.     Defendant, VERONICA BROWN (hereinafter referred to as "Defendant BROWN"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

22.     Defendant, ANTHONY BERGER (hereinafter referred to as "Defendant BERGER"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

23.     Defendant, BRIAN O'NEIL (hereinafter referred to as "Defendant O'NEIL"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

24.     Defendant, KATIE THOM (hereinafter referred to as "Defendant THOM"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

25.     Defendant, FRANK MCDINE (hereinafter referred to as "Defendant MCDINE"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

26.     Defendant, STEFAN PETTY (hereinafter referred to as "Defendant PETTY"), was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

27.     Defendant, KENNETH RUBEL (hereinafter referred to as "Defendant RUBEL"), was at all times relevant an Allegheny County Jail Sergeant, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

28.     This suit is against all the Defendants in their official and individual capacities, and it is alleged that all Defendants were acting under color of state law with respect to the conduct complained of in this complaint.

29.     At all times relevant hereto, all of the Defendants are agents, servants, and/or employees of ALLEGHENY COUNTY and will be collectively referred to as the "COUNTY Defendants".

<u>FACTUAL ALLEGATIONS</u>

30.     At all times relevant hereto, all Defendants were required to adhere to and enforce the following policies and procedures:

        a.      All Defendants must not permit any inmate to be subjected to abuse;

7

     b.     All Defendants must thoroughly investigate allegations of abuse;

     c.     All Defendants define abuse as (1) the use of excessive force upon an inmate, (2) an occurrence of an unwarranted life-threatening act against an inmate; (3) a verbal or written threat to inflict physical injury directed toward an inmate; and/or (4) sexual conduct;

     d.     All Defendants must allow abuse to be reported verbally or in writing to any staff member;

     e.     All Defendants agree that sexual harassment of inmates is prohibited;

     f.     All Defendants define harassment as sexual advances, requests for sexual favors, and other verbal, visual or physical contact of a sexual nature, sexually offensive comments or gestures or any physical contact that is of a sexual nature or sexually suggestive;

     g.     All Defendants agree that all sexual contact with inmates is prohibited; and

     h.     All Defendants agree that sexual contact refers to any sexual behavior directed towards an inmate; it includes, but is not limited to: rape, any acts or attempts to commit acts which involve sexual contact, sexual abuse or assault, the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thighs, or buttocks.

31.     At all times relevant hereto, the COUNTY Defendants and Defendant ALLEGHENY COUNTY were also required to adhere to and enforce the following policies and procedures:

     a.     These Defendants must consider correctional officer-inmate sexual assault prevention as one of the highest priorities of service within the correctional setting;

     b.     These Defendants must work together to identify inmates at risk for sexual assault by other inmates or correctional staff;

     c.     These Defendants will have an outlined program for responding to sexual assaults of inmates;

     d.     These Defendants must educate, train, enforce and/or adhere to the proper procedure in reporting sexual assaults and/or fraternization of correctional officers with inmates to make sure that inmates are not being sexually assaulted, raped and/or abused by correctional officers and/or other inmates for any period of time;

e.      These Defendants must learn about an inmates' high risk periods of being sexually assaulted by other inmates and/or correctional staff;

f.      These Defendants must learn, supervise and/or report any information that relates to sexual assaults on inmates by correctional staff;

g.      These Defendants must make rounds upon the pod pursuant to policy and procedure in order to prevent sexual assaults upon inmates by correctional staff on the pod;

h.      These Defendants will review information of any indication of sexual assaults by correctional staff upon inmates on a pod in this institution;

i.      These Defendants conducting the rounds on a pod will be continuously alert to violent/suspect/harmful behavior;

j.      These Defendants will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for inmate abuse by correctional staff;

k.      These Defendants who recognize an inmate as being potentially abused, either physically or sexually, are to request immediate intervention/investigation of the situation through the appropriate authorities;

l.      These Defendants' staff who recognize an inmate as being potentially abused by anyone are to request immediate assistance in investigating said matter;

m.      Regular, documented supervision should be maintained of a pod by a correctional officer;

n.      Regular, documented round should be maintained of a pod by a correctional officer;

o.      Constant supervision by a staff member of the pod is required, and if a situation arises which requires intervention, it must be investigated immediately and intervention is required if the safety of an inmate is at issue;

p.      The procedures for making rounds and how rounds are made, as well as inspection of cells, should be clearly outlined;

q.    Clear, current and accurate information regarding an inmate must be communicated between shifts and correctional personnel pursuant to the procedures of communication;

r.    The intervention plan on how to handle inmate abuse by correctional staff that is in progress should be clearly outlined;

s.    Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed inmate abuse by correctional staff will be in place;

t.    Procedures for documenting the identification and monitoring of potential or attempted inmate abuse by correctional staff will be detailed, as well as procedures for reporting a completed inmate abuse by correctional staff;

u.    The intervention plan should specify the procedure for administrative review if an inmate is sexually abused by a correctional staff member; and

v.    A formal procedure of collecting evidence and preserving evidence such as camera footage must be in place and clearly outlined.

32.    At all times relevant hereto, the Defendants knew or should have known about the following facts and situations existed at the Allegheny County Jail prior to April 2015 through the present:

a.    There are areas of the Allegheny County Jail which are not on camera surveillance and are known to the Defendants, which include certain cells on pods as well as other areas in the jail. (See Deposition of Orlando Harper, pp. 17-21, attached hereto as "Exhibit 1" to this Complaint).

b.    Cameras assisted the correctional staff in monitoring the jail.

c.    It was well known that areas off camera at the Allegheny County Jail increased the risk of violent physical and/or sexual abuse occurring on the jail premises.

d.    Most pods were only staffed with one correctional officer.

e.    A correctional officer could arbitrarily, and without supervisor approval, move inmates from pod to pod as well as cell to cell. (See Deposition of Latoya Warren, pp. 5-18, attached hereto as "Exhibit 2" to this Complaint).

f.    It is important to classify and house someone properly at a jail because of safety; specifically, an inmate could be put at risk for attacks and increased victimization if an inmate is arbitrarily housed and moved from cell to cell

10

or pod to pod.

g.    Misconducts/Grievances help notify correctional staff of issues on pods and/or with inmates.

33.    At all times relevant hereto, Defendant REBER was a correctional officer at the Allegheny County Jail.

34.    At all times relevant hereto, Defendant REBER had the authority, and it was within the scope of his employment, to appoint, nominate, grant, place, and/or designate female inmates as pod workers from January 2015 through October 2015.

35.    At all times relevant hereto, Defendant REBER would work his pod alone and did not have any supervision of his interactions with female inmates on the pods he was assigned to monitor and work.

36.    At all times relevant hereto, Defendant REBER, with the knowledge and silent consent of the co-Defendants in this matter, began to utilize his position as a correctional officer as a way to rape, sexually assault and/or victimize female inmates on the pods he worked from January 2015 through October 2015.

37.    At all times relevant hereto, Defendant REBER focused on and targeted female inmates who were recovering drug addicts and/or in the process of experiencing a full blown drug addiction.

38.    At all times relevant hereto, the conduct and actions of Defendant REBER were known to the other Defendants in this matter and is evidenced by the following examples:

a.    Defendants and other Allegheny County Jail employees referred to Defendant REBER as a "pod father", a slang term referencing Defendant REBER's continual and widespread sexual relationships with female inmates;

b.    Fellow inmates housed on a pod worked by Defendant REBER filed grievances regarding Defendant REBER's conduct towards other inmates;

      c.      Defendants knew that Defendant REBER had property of inmates displayed in his work locker located at the Allegheny County Jail; and

      d.      Defendants and other Allegheny County Jail employees referred to female inmates being sexually abused, assaulted, victimized, and/or in sexually relationships with Defendant REBER as "girlfriends" of Defendant REBER.

39.    At all times relevant hereto, the Allegheny County Jail, by and through the conduct and actions of the COUNTY Defendants,  knew or should have known of the conduct of Defendant REBER, yet continued to accept and house female inmates in the pods worked by Defendant REBER.

40.    On or about January 21, 2015, Plaintiff Behanna entered guilty pleas in the Washington County Court of Common Pleas Criminal Division on two counts of possession of drug paraphernalia and was ultimately sentenced to two consecutive 12 month sentences.

41.    Upon information and belief, due to overcrowding at Washington County Correctional Facility, on February 20, 2015, Plaintiff Behanna was transferred from Washington County Correctional Facility to Allegheny County Jail to serve her sentence.

42.    At all times relevant hereto, all parties can agree that the crime of possession of drug paraphernalia is ONLY punishable by imprisonment, probation, fines and/or what is otherwise prescribed by Pennsylvania law.

43.    All parties can agree that correctional officers are prohibited from raping, sexually abusing, sexually assaulting, victimizing and/or having sexual relations with inmates.

44.    All parties can agree that nothing under Pennsylvania law allows beatings, corporal punishment, raping, sexual abuse, sexual assaults, victimization or any other sexual/physical/mental violence or conduct as part of a sentence for a criminal conviction or plea.

12

45.     From February 19, 2015 through April 1 2015, Defendant REBER engaged in a sexual relationship and/or sexually assaulted at least one other female inmate, other than Ms. Behanna, who was housed on the pod he worked.

46.     At all times relevant hereto, Defendant REBER used his position as a correctional officer to victimize female inmates.

47.     At all times relevant hereto, Defendant REBER would make female inmates pod workers in order to facilitate his sexual assaults and relationships with female inmates.

48.     At all times relevant hereto, all of the Defendants knew or should have known of the conduct described in the entire Complaint.

49.     According to a Criminal Complaint filed against Defendant REBER, which is attached as Exhibit 3 to the Complaint, the following facts were averred concerning the conduct of Defendant REBER prior to his conduct with Ms. Behanna:

The victim in this case is a thirty two year old female whose true identity is known to me, but is being withheld for purposes of this affidavit, both to ensure her safety and to preserve the Integrity of the investigation. In order to protect the victim's anonymity she shall be referred to as "Jane Doe". Jane Doe's identity was verified and memorialized by me and she shall be available for future court proceedings.

On November 23, 2015, I interviewed a female inmate of the Allegheny County Jail, referred in this affidavit as Witness #1, who reported to me that she had been touched in a sexual manner by Correctional Officer Joshua Reber. Witness #1 stated to me that her good friend (Jane Doe) had confided to her that Jane Doe had a sexual relationship with C.O. Joshua Reber while Jane Doe was in the Allegheny County Jail. Jane Doe had continued to communicate with Witness #1 about continuing the sexual relationship with Reber outside of the jail.

Through Allegheny County Jail records, I determined that Jane Doe was an inmate at the Allegheny County Jail from December of 2014 until April of 2015. She was housed on Pod 4D. It is also fact that Correctional Officer Joshua Reber worked on this Pod during that time period.

On November 27, 2015, I interviewed Jane Doe at Allegheny County Police Headquarters. Jane Doe stated that Correctional Officer Joshua Reber would come into her cell and touch her body and kiss her passionately. Jane Doe stated this occurred over

13

the date range of February 19th. 2015 to the day she was released from the jail, which
was April 1. 2015.  Jane Doe stated that she was a "pod worker", which Is a position for
Inmates at the jail which allows for added benefits, such as additional time out of her cell
and better coffee.  C.O. Reber allowed her to stay a pod worker and she allowed him to
come Into her cell and make out with her.  Jane Doe said that Reber would caress her
buttocks while he kissed her.  Jane Doe stated this happened dozens of times in her ceil
on Pod 4D.  Jane Doe said it happened once by the shower area of the pod also,
explaining that she was cleaning the showers when Reber came and pushed her up
against the wall, kissed her and touched her buttocks.

Jane Doe stated that she and Reber would pass notes back and forth.  Jane Doe told me
that she had kept a few of the notes.

She then provided me four pieces of paper that were handwritten notes.  The papers were
consistent with paper from the Allegheny County Jail, with one piece written on the back
of an Official Allegheny County Jail Interoffice Mall form.  A sampling of the back and
forth writings are as follows:

Jane Doe- Maybe we both can be up to no good tonight
Joshua Reber- HaHa I planned on It
Jane Doe- Oh Huh! Tell me when & where
Joshua Reber- Yea that's the tricky part. Seriously though. I was seconds from hard
earlier at your cell.

Another note that Jane Doe reported she received from Reber had a drawn picture of a
smiling stick figure with an erect penis.

Other notes had Reber providing his personal email address to Jane Doe to communicate
after her release.

Jane Doe remained a pod worker the entire time she was housed at the Allegheny County
Jail which would indicates she was in good standing with the officers working Pod 4D.

Jane Doe said she did communicate with Joshua Reber by email after she was released.
She also admitted that a sexual relationship continued between the two with multiple
rendezvous where sex occurred between the two.  Jane Doe provided the email address
and allowed me to access her email account.

Based upon the above, your affiant submits that Joshua Reber was and is an employee of
a county correctional facility and did engage in indecent contact with an inmate in
violation of PACC 3124,2 Institutional Sexual Assault.


50.    In mid-April 2015, Defendant REBER first encountered Ms. Behanna while she

was housed on the pod he worked.

51.     When Defendant REBER first approached and encountered Ms. Behanna, she was housed in a double-occupancy cell.

52.     In late-April 2015 or early-May 2015, Defendant REBER, in taking the first systematic step in victimizing Ms. Behanna, transferred Ms. Behanna to the first available single-occupancy cell (Cell 222).

53.     Immediately after accomplishing said transfer to Cell 222, Defendant REBER began visiting Ms. Behanna's cell and engaging in inappropriate behavior, including making sexually suggestive remarks, touching and groping her.

54.     Then Defendant REBER appeared early one morning in Ms. Behanna's cell and forced her to perform oral sex on him.

55.     Ms. Behanna was forced to comply with Defendant REBER's rape and sexual demands, including being physically restrained by Defendant REBER.

56.     At all times relevant hereto, Defendant REBER continued to sexually harass, both verbally and physically, Ms. Behanna after the initial rape.

57.     At all times relevant hereto, the COUNTY Defendants knew or should have known that Defendant REBER was entering Ms. Behanna's cell an inappropriate amount of time because this cell was "on camera"; however, said COUNTY Defendants chose to not enforce its own policy and procedures and did nothing to stop this conduct.

58.     At all times relevant hereto, Defendant REBER told Ms. Behana that he was transferring her to Cell 221 because it was a single-occupancy cell that was "off camera".

59.     At all times relevant hereto, Ms. Behanna begged, pleaded, protested and/or told Defendant REBER not to move her to an "off camera" cell because she was scared of Defendant

REBER having access to her cell without at least the perceived threat that his actions would be recorded by surveillance.

60.     At all times relevant hereto, despite Ms. Behanna's vehement protests, Defendant REBER transferred Ms. Behanna to Cell 221, an "off camera" cell.

61.     At all times relevant hereto, all of the Defendants knew that correctional officers had unsupervised authority and access to changing the cell assignments and/or housing of inmates, which puts inmates at risk for sexual assaults and victimization.

62.     At all times relevant hereto, after being transferred to Cell 221, Defendant REBER raped Ms. Behanna on at least two other occasions.

63.     It is believed and therefore averred that the Defendant REBER physically contacted and/or sexually assaulted Ms. Behanna on every single occasion he worked from late-April 2015 until she was discharged in July 2015.

64.     At all times relevant hereto, Defendant REBER's rapes, assaults, harassment and inappropriate behavior were known to fellow correctional officers and superiors.

65.     Defendant REBER had a known modus operandi of singling out specific inmates to victimize, transferring them to single cells that were not subject to surveillance video, and then perpetrating rapes, sexual assaults and sexual harassment of the victims.

66.     Upon information and belief, Defendant REBER carried out this systematic sexual abuse on a substantial number of female inmates housed on pods he worked for a one year period from 2014 to 2015.

67.     Defendants and other Allegheny County Jail employees referred to Defendant REBER as a "pod father", a slang term referencing Defendant REBER's continual and widespread sexual relationships with female inmates.

68.     Fellow inmates housed on Pod 4D filed grievances regarding Defendant REBER's conduct towards Ms. Behanna.

69.     The grievances were ignored and/or destroyed by Defendant REBER's co-workers and supervisors, including Defendant RUBEL.

70.     Defendant REBER threatened Ms. Behanna that "the Sergeant is like my dad" and will not act on any of the grievances.

71.     Defendants BERGER and BENDER commented to Ms. Behanna about their knowledge of Defendant REBER's conduct.

72.     Further, Defendant REBER had property of Ms. Behanna's hung up on his locker room door.

73.     All of the named-Defendants were aware that Defendant REBER had hung up Ms. Behanna's property (a cartoon drawing) and that it belonged to Ms. Behanna.

74.     Defendant BERGER would refer to Defendant REBER as Ms. Behanna's "boyfriend".

75.     Upon information and belief, when Defendant REBER was on military leave in June 2015, he contacted Defendant TUCKER via e-mail to check on Ms. Behanna.

76.     When Ms. Behanna was transferred back to Washington County Correctional Facility in July 2015, the Washington County Correctional Facility correctional officers already knew about the assaults and harassment and made comments to Ms. Behanna.

77.     Due to the amount of grievances filed by female inmates about the conduct of Defendant REBER, Internal Affairs investigated Defendant REBER, and ultimately criminal charges were filed against him as a result of the aforementioned conduct.  One of the criminal complaints stated:

Your affiant is Inspector William Palmer of the Allegheny County Police Department. I have been a police officer with this department for over 22 years. For the past 2 years I have been assigned to the Allegheny County Jail Internal Affairs Unit. All information in this affidavit was learned directly by me.

The victim in this case is a thirty three old female whose true identity is known to me, but is being withheld for purposes of this affidavit, both to ensure her safety and to preserve the integrity of the investigation. In order to protect the victim's anonymity she shall be referred to as "Jane Doe". Jane Doe's identity was verified and memorialized by me and she shall be available for future court proceedings.

On October 20th, 2015 I learned that numerous female inmates were reporting knowledge of a correctional officer named Joshua Reber having sexual relations with numerous female inmates. I interviewed the reporting female inmates and their statements will be contained in the investigative police file. The information gathered from these inmates lead to my interviews of numerous other female inmates who reportedly were having relationships with Joshua Reber. The names of these female inmates were provided but will not be listed in this affidavit. One of these ladies had been released from the Allegheny County Jail. On November 18th, 2015, I was able find and interview this 33 year-old woman, here-in referred to as Jane Doe. In the interview Jane Doe stated the following:

Jane Doe was housed as an inmate at the Allegheny County Jail from February of 2015 until July of 2015. From February 24th until her release, Jane Doe was housed on Pod 4D. Jane Doe said the correctional officer working her pod on the daylight shift was C.O. Joshua Reber. Jane Doe said that Reber made her a "pod worker" which allowed her added benefits, such as a single cell and staying out of her cell later than other inmates on the pod. Jane Doe said that around the Easter holiday of this year C.O. Reber came to her cell door and told her that she better be naked in her cell the next morning at 6:30(a.m.). That next morning C.O. Reber used a key and entered her cell. Jane Doe said that Reber stood there for a while and then touched her hip. Nothing else happened this day, but Reber began regularly coming into Jane Doe's cell. He then began coming in and kissing her. Within weeks, Reber was having her perform oral sex on him. Jane Doe said that the oral sex happened twice and the two times were about two weeks apart. Jane Doe believes she was in cell #222. While she was in this cell #222, Officer Reber tried to perform oral sex on her, but she was able to stop him from doing that. Besides coming into her cell to kiss and touch her, Jane Doe said that Reber would talk to her about continuing their relationship outside of the jail. Reber told Doe that he was unhappy with his marriage. Reber told Jane Doe intimate details of his personal life to include his wife and kids' names, when he was going to deploy in the military, and about a July 4th party. Jane Doe stayed a pod worker and in Officer Reber's good graces her entire stay at the Allegheny County Jail. Jane Doe stated that Reber even helped her pack up to leave and stayed with her at the elevator until she departed for good.

After Jane Doe's release from jail, Joshua Reber assisted her in setting up an email account through Gmail. Reber provided his Gmail account to Jane Doe, and the two continued to communicate through Gmail. Jane Doe provided me the email addresses associated with both accounts.

Allegheny County Jail records indicate Correctional Officer Joshua Reber worked on Pod 4D during Jane Doe's stay at the jail.

Based upon the above, your affiant submits that Joshua Reber was and is an employee of a county correctional facility and did engage in sexual intercourse and had indecent contact with an inmate in violation of PACC 3124.2 Institutional Sexual Assault.

(See Criminal Complaint, attached hereto as "Exhibit 4" to this Complaint).

       78.    As a result of the criminal charges, Defendant REBER pled guilty to charges related to these allegations, was labeled a Sex Offender due to this conduct and has been sentenced to 6 – 20 months incarceration and a subsequent probation term. (See the sentencing orders attached hereto as "Exhibit 5" to this Complaint).

79. The conduct of Defendant REBER's fellow correctional officers in covering up, destroying and/or ignoring the grievances filed by female inmates against Defendant REBER was a form of intimidation consistently utilized by the correctional officers to discourage inmates from voicing their concerns and/or complaints through the grievance procedure.

80. Additionally, on the occasion an inmate did submit a grievance, supervisory staff, including but not limited to, "unit managers", would review the submitted grievances and discard the grievances in the garbage so as to eliminate inmates' ability to communicate their concerns and/or complaints about Defendant REBER.

81. At all times pertinent hereto, the COUNTY Defendants and other supervisory named Defendants had knowledge of this systemic failure of the grievance procedure, but did nothing to remedy this problem, in deliberate indifference to the health, safety and welfare of all inmates, specifically Ms. Behanna.

82. At all times pertinent hereto, the COUNTY Defendants and other supervisory named Defendants had knowledge that inmates grievances were not being delivered to the appropriate party and/or office in a secure and safe manner.

83. This systemic failure of the grievance procedure created an intentionally ineffective system for inmates to communicate their complaints and/or concerns.

84. The grievance procedure implemented by the COUNTY Defendants, and followed by Defendant HARPER, and other supervisory named Defendants, was futile and in deliberate indifference to the rights of inmates, specifically Ms. Behanna.

85. At all times relevant during these sexual attacks by Defendant REBER, Ms. Behanna was in fear for her life and was intimidated and coerced by Defendant REBER and other

correctional staff and the other Defendants to not say anything about what she saw and what happened to her at the Allegheny County Jail.

86.     At all times relevant hereto, the following individuals knew or should have known about the abuse that was occurring at the prison but chose not to report it and acted to promote this type of conduct:

a.     Defendant HARPER;

b.     Defendant WARREN;

c.     Defendant WAINWRIGHT;

d.     Defendant MCGOVERN;

e.     Defendant BENDER;

f.     Defendant RHOADES;

g.     Defendant OLEAN;

h.     Defendant TUCKER;

i.     Defendant BROWN;

j.     Defendant BERGER;

k.     Defendant O'NEIL;

l.     Defendant THOM;

m.     Defendant MCDINE;

n.     Defendant PETTY;

o.     Defendant RUBEL; and

p.     Defendant REBER.

87.     In addition to the above-mentioned personnel, Defendants HARPER, WARREN and WAINWRIGHT, as administration of Allegheny County Jail, had a duty to control and/or supervise all of the correctional officers employed by Allegheny County.

88.     Additionally, all of the COUNTY DEFENDANTS were responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate supervision of inmates on the pods within Allegheny County Jail.

89.     Moreover, as the COUNTY Defendants were responsible for formulating and implementing procedures to protect the safety, health, availability and provision of adequate care, custody and control as well as proper housing and guard interaction with inmates

90.     Additionally, the COUNTY Defendants condoned behavior by the named Defendants that created an environment whereby employees of Allegheny County Jail were unable to report incidents of inappropriate conduct by fellow employees and/or supervisory staff.

91.     The named Defendants serving in supervisory roles intentionally disregarded and/or actively condoned in this inappropriate conduct in deliberate indifference to the health, safety and welfare of all inmates, specifically Ms. Behanna.

92.     As evidence of the same, Defendant REBER consistently moved freely about Allegheny County Jail, raping, sexually assaulting and sexually harassing inmates without any resistance and/or questioning from the named supervisor Defendants.

93.     On these occasions, Defendant REBER was able to gain access to these "off camera" cells and/or areas with the assistance of other employees of Allegheny County Jail

94.     Further, Defendant REBER had access to reassign housing of female inmates in order to move them to cells "off camera" in order to victimize and/or sexually assault them without any fear of being caught.

95.     Furthermore, once Defendant REBER chose a victim, he would need the assistance of the correctional officers to reassign the housing arrangements of the female inmates.

96.     Once Defendant REBER gained access to his victim's individual cell, he was left alone without any supervision from the cameras.

97.     This behavior and/or conduct freely exhibited by Defendant REBER is indicative of the breadth and wide-spread knowledge of his scheme to physically and sexually assault inmates at his own choosing.

98.     Upon information and belief, the COUNTY Defendants had knowledge of this behavior and/or conduct, but did nothing.

99.     At all times relevant hereto, it is believed that the COUNTY Defendants and Defendant ALLEGHENY COUNTY knew or should have known of the conduct of Defendant REBER on pod 4D  and other pods due to the following but not limited to:

    a.     Grievances filed by the other inmates;

    b.     Official Inmate Complaint forms;

    c.     Confidential informants;

    d.     Witnessing events;

    e.     Witnessing attacks;

    f.     Increased medical requests for unexplained injuries;

    g.     Incident reports by correctional officers for unexplained injuries; and

    h.     Inmates refusing to cooperate or explain injuries.

100.     By failing to act and/or stop Defendant REBER, all of the COUNTY Defendants affirmed of Defendant REBER's conduct and in doing so, acted with deliberate indifference to health, safety and welfare of all inmates, specifically Ms. Behanna.

22

101.    No one took any of the female inmates' complaints seriously until many more victims were assaulted.

102.    As a direct and proximate result of the Defendants' conduct, Ms. Behanna suffered the following injuries:

      a.      Sexual assault;

      b.      Physical abuse;

      c.      Mental Distress;

      d.      Post-traumatic stress disorder;

      e.      Emotional Distress;

      f.      Mental Anguish;

      g.      Depression; and

      h.      Anxiety.

103.    As a result of these injuries, Ms. Behanna has sustained the following damages:

      a.      She has suffered and will suffer great pain, inconvenience, embarrassment and mental anguish;

      b.      She may be required to pay sums of money for medical attention, medical supplies and medicines;

      c.      Her general health, strength and vitality have been impaired;

      d.      She has been and will be deprived of her earnings;

      e.      Her earning capacity has been reduced and may be permanently impaired; and

      f.      She has been and will in the future be unable to enjoy various pleasures of life that she previously enjoyed.

## COUNT I – EIGHTH AND FOURTEENTH AMENDMENTS
## PLAINTIFF v. ALL DEFENDANTS

104.    Ms. Behanna incorporates by reference her allegations contained in Paragraphs 1 through 103 as though fully set forth herein.

105.    Defendants deprived Ms. Behanna of the rights, privileges, and immunities secured by her pursuant to 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution, as well as the rights, privileges and immunities provided to Ms. Behanna by the Pennsylvania state constitution.

106.    At all times relevant hereto, pursuant to the Eighth Amendment to the United States Constitution, Ms. Behanna had a right to be free from cruel and unusual punishment.

107.    At all times relevant hereto, pursuant to the Fourteenth Amendment to the United States Constitution, Ms. Behanna had a right to life, liberty and property, and to not be deprived of life, liberty and/or property without due process.

108.    The rape, sexual assaults and sexual harassment perpetrated by Defendant REBER, and the actions and inactions of all Defendants, as previously set forth and further detailed below, constituted violations of Ms. Behanna's Eighth and Fourteenth Amendment rights.

109.    Ms. Behanna's injuries and damages were the direct and proximate result of the Defendants' conduct as follows:

       a.    In failing to recognize that she was the victim of rapes and sexual assaults at the hands of Defendant REBER;

       b.    In failing to respond properly or adequately to the objective signs that she was the victim of intimidation and coercion by Defendant REBER;

24

c.    In failing to properly monitor the employees, servants and/or agents of the Defendants;

d.    In failing to provide a safe environment that would have prevented physical and emotional abuse she endured while incarcerated at Allegheny County Jail;

e.    In failing to review information concerning issues related to proper conduct of Correctional Officers and other staff of Allegheny County Jail;

f.    In failing to outline the procedures for the proper handling of inmates at the Allegheny County Jail;

g.    By acting with deliberate indifference to the constitutional rights of the citizens of this Commonwealth;

h.    By acting with deliberate indifference to the need to protect the citizens and inmates from physical and sexual attacks by Correctional Officers;

i.    By acting with deliberate indifference to the Correctional Officers' use of excessive force and sexual assaults in monitoring and watching inmates;

j.    By acting with deliberate indifference to the obvious need for training and supervision of the Correctional Officers;

k.    In failing to properly train the Correctional Officers, including Defendants, so that excessive force which included sexual abuse, physical abuse and mental abuse, would not be applied when monitoring inmates;

l.    In failing to properly supervise the Correctional Officers so that excessive force which included sexual abuse, physical abuse and mental abuse, would not be applied when housing inmates;

m.    In failing to train properly individual Correctional Officers in safe methods of handling incarcerated persons;

n.    In failing to train properly individual Correctional Officers in the monitoring of incarcerated persons under the care and custody of the Defendants;

o.    In failing to review information concerning issues related to sexual assaults of inmates by Correctional Officers;

p.    In sexually assaulting and abusing inmates;

q.    In physically abusing inmates;

r.      In mentally abusing inmates;

s.      In violating policy and procedures with deliberate indifference;

t.      In sexually harassing inmates;

u.      In forcing inmates to perform sex acts on Correctional Officers;

v.      In failing to report to the proper authorities anything about the known sexual assaults, abuse and other conduct being performed on the inmates;

w.      In implementing policies and procedures that infringed on the rights of inmates;

x.      Defendant Correctional Officers, Sergeant and Captain had actual knowledge of Defendant REBER's ongoing rapes, sexual assaults and harassment, as specified in the preceding paragraphs in this Complaint, and yet failed to intervene to prevent and/or stop the acts from continuing, despite having a reasonable and realistic opportunity to intervene;

y.      Defendant Correctional Officers, Sergeant and Captain had actual knowledge that Cell 221 was "off camera" and that Ms. Behanna was incarcerated in Cell 221, and thus subject to a significant and unreasonable risk of assault as there was no deterrent and/or supervision of the cell;

z.      Defendant Correctional Officers, Sergeant and Captain failed to perform their requisite duties, namely, to perform routine "rounds" or supervisory walk-throughs, which would have alerted them to ongoing rapes, sexual assaults and harassment of female inmates, including Ms. Behanna, by Defendant REBER;

aa.     Defendant Correctional Officers, Sergeant and Captain ignored obvious signs that Defendant REBER was raping, sexually assaulting and harassing Ms. Behanna as he was frequently caught spending time in her cell while ignoring other responsibilities, and such conduct was the subject of discussion by and between the fellow correctional officers, sergeants, captains and Defendant REBER;

bb.     Defendant Correctional Officers, Sergeant and Captain, after learning of the ongoing rapes, sexual assaults and harassment, failed to intervene and protect Ms. Behanna from further rapes, sexual assaults and harassment;

cc.     Defendant Correctional Officers, Sergeant and Captain, after learning of the ongoing rapes, sexual assaults and harassment, failed to report Defendant

REBER to the appropriate authorities so as to protect Ms. Behanna from further rapes, sexual assaults and harassment;

dd.     In failing to place Ms. Behanna in the appropriate housing unit;

ee.     In failing to provide regular and documented supervision of Pod 4D

ff.     In failing to take action when they received appropriate information that the Defendant REBER was a threat to other inmates on Pod 4D;

gg.     In failing to follow the policies and procedures which govern Pod 4D;

hh.     In failing to outline the procedures for moving inmates' cells to other housing options at the jail;

ii.     In failing to provide procedures for communication between shifts, correctional officers, administrators and Allegheny County Jail correctional personnel regarding the status of a pod in a clear, current and accurate fashion;

jj.     In failing to outline an intervention plan on how to handle sexually violent correctional officers;

kk.     In failing to have procedures in place to notify the Allegheny Jail administrators, outside authorities and family members of potential, attempted or completed sexual attacks on inmates;

ll.     In failing to provide procedures of documenting the identification and monitoring of potential or attempted attacks on inmates by inmates;

mm.     In failing to monitor the CCTV and communicating and perceived risks;

nn.     In failing to install cameras in "off camera" areas;

oo.     In failing to stop housing inmates in "off camera" areas;

pp.     In recognizing that the jail was built in a way that made it unsafe to house inmates in certain cells;

qq.     Defendants HAPER, WARREN and WAINWRIGHT had actual knowledge that cells that were "off camera" were far more likely to be the location of assaults, both physical and sexual in nature, and they had actual knowledge of other assaults that occurred in "off camera" cells;

rr.     Defendants HARPER, WARREN and WAINWRIGHT had actual knowledge that certain cells, including Cell 221, were "off camera", and thus posed an unreasonable risk of harm to inmates, including Ms. Behanna;

ss.     Defendants HARPER, WARREN and WAINWRIGHT had the authority to install cameras on all cells, including Cell 221, but were indifferent to the risk of harm posed to inmates by the absence of such cameras, and thus failed to take any steps to protect those incarcerated in "off camera" cells;

tt.     Defendants HARPER, WARREN and WAINWRIGHT instituted a policy and practice whereby male correctional officers had unfettered access and control over female inmates, without a supervisor or fellow correctional officer present, thereby creating an unreasonable risk of harm to the female inmates, including Ms. Behanna;

uu.     Defendants HARPER, WARREN and WAINWRIGHT had a rape tolerance policy established through its failure to punish, reprimand and/or take any corrective or disciplinary measure against Allegheny County Jail employees who (1) engaged in sexual conduct with inmates; (2) failed to intervene to protect or cease sexual conduct between employees and inmates; and/or (3) failed to report known sexual conduct between employees and inmates.  This created a culture whereby rapes, sexual assaults and sexual harassment of inmates could not only continue, but were both tolerated and permitted.

110.    At all times relevant, it was the practice, policy and/or custom of Defendants and/or their officers to use excessive force, which included sexual abuse, physical abuse and mental abuse, in the handling of inmates, without provocation or cause, thereby depriving individuals of their rights.

111.    In clear violation of the United States Constitution, all Defendants used unlawful excessive and/or were deliberately indifferent to the use of excessive force against Ms. Behanna.

112.    Defendants, in depriving Ms. Behanna of her constitutional rights, acted intentionally, willfully, wantonly, maliciously, outrageously, with deliberate indifferent and negligently.

113.    The actions of the individual correctional officers resulted from and were taken pursuant to a policy, practice and/or custom of the Defendants, which policy, practice and/or custom is implemented by individual correctional officers.

114.    Defendants ALLEGHENY COUNTY, HARPER, WARREN, WAINWRIGHT, MCGOVERN and RUBEL have approved and condoned the procedures implemented by and enforced by the individual correctional officers.

115.    The Defendants' failure to recognize or respond to the excessive force conduct, which included sexual abuse, physical abuse and mental abuse, presented by their employees, servants and/or agents, while Ms. Behanna was in their care and custody, caused Ms. Behanna's injuries and damages.

116.    The unlawful practices, customs and/or policies of the Defendants included the following:

  a.  Deliberate indifference to the Constitutional rights of the inmates incarcerated in Allegheny County Jail;

  b.  Deliberate indifference to the need to protect the inmates from physical, sexual and mental abuse by jail personnel;

  c.  Deliberate indifference to the Correctional Officers' use of excessive force and abuse in controlling and monitoring inmates;

  d.  Deliberate indifference to the obvious need for training and supervision of the Correctional Officers and other jail personnel;

  e.  Failing to properly train the Correctional Officers so that excessive force and abusive conduct would not be applied to inmates;

  f.  Failing to properly supervise the Correctional Officers so that excessive force and abusive conduct would not be applied when interacting with inmates;

  g.  In allowing the Correctional Officers to be unsupervised;

  h.  In allowing and condoning the Correctional Officers' actions in handling

inmates in order to intimidate and coerce citizens who have witnessed Correctional Officer misconduct;

i.      In promoting an atmosphere where inmates' rights are ignored in order to cover up misconduct;

j.      In housing inmates in an arbitrary manner;

k.      In allowing access to housing assignments to correctional officers and allowing them to move inmates without any oversight, approval or plan; and

l.      In allowing correctional officers to move inmates.

117.    Ms. Behanna also claims reasonable attorneys' fees and costs from Defendants as provided for by 42 U.S.C. § 1988.

WHEREFORE, the Plaintiff, Melissa Behanna, demands judgment be entered against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT II - INDEMNIFICATION
## PLAINTIFF v. ALL DEFENDANTS

118.    Ms. Behanna incorporates by reference her allegations contained in Paragraphs 1 through 117 as though fully set forth herein.

119.    Pursuant to 42 Pa. C.S. § 8548, Defendant ALLEGHENY COUNTY is the indemnitor of its employees, the individual correctional officers, for the payment of any judgment for damages resulting from a judicial determination that an act of any of individual correctional officers was the cause and their actions were within the scope of their duties as correctional officers.

120.    Ms. Behanna is therefore entitled to recover payment from the Defendant ALLEGHENY COUNTY for any judgment against the individual defendants arising from the prior counts of this Complaint.

30

WHEREFORE, Plaintiff, Melissa Behanna, demands judgment be entered against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT III – ASSAULT & BATTERY/RECKLESSNESS/NEGLIGENCE
## PLAINTIFF v. DEFENDANT REBER

121.    Ms. Behanna incorporates by reference her allegations contained in Paragraphs 1 through 120 as though fully set forth herein.

122.    In the alternative, the injuries and damages previously described were the direct and proximate result of the intentional, negligent, reckless, and malicious acts of Defendant REBER.

123.    Specifically, Defendant REBER intentionally, deliberately and knowingly caused unwanted physical contact upon the person of Ms. Behanna.

124.    Ms. Behanna was a victim of rape and sexual assault by Defendant REBER.

125.    In the alternative and, at all times relevant hereto, Defendant REBER was presenting objective manifestations that he was a danger to inmates before he raped and sexually assaulted Ms. Behanna on several occasions.

126.    At all times relevant hereto, the intentional, reckless and violent conduct of Defendant REBER placed Ms. Behanna in an immediate and reasonable apprehension of suffering severe bodily harm as a result of Defendant REBER's sexual assault conduct.

127.    The injuries and damages herein set forth were the direct and proximate result of the conduct of Defendant REBER, in the following respects:

a.    In negligently, recklessly and intentionally sexually assaulting Ms. Behanna;

b.    In negligently, recklessly and intentionally touching Ms. Behanna; and

31

   c. In negligently, recklessly and intentionally raping Ms. Behanna with personal animosity.

128. At all times relevant hereto, the actions of Defendant REBER were outrageous, willful, wanton, and a gross act of reckless indifference.

129. As a result of Defendant REBER's conduct, Ms. Behanna has suffered all of the injuries and damages previously described.

WHEREFORE, Plaintiff, Melissa Behanna, demands judgment be entered against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT IV – INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFF v. DEFENDANT REBER

130. Ms. Behanna incorporates by reference her allegations contained in Paragraphs 1 through 129 as though fully set forth herein.

131. The actions of Defendant REBER, as described throughout this Complaint, constitute infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

132. As a result of Defendant REBER's actions, Ms. Behanna has suffered all of the injuries and damages previously described herein.

133. The actions of Defendant REBER were outrageous, willful, wanton and a gross act of reckless indifference; therefore, Defendant REBER should be subjected to the imposition of punitive damages, which Ms. Behanna claims against Defendant REBER.

WHEREFORE, Plaintiff, Melissa Behanna, demands judgment be entered against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## JURY DEMAND

PLAINTIFF REQUESTS THAT ALL ISSUES THAT MAY BE DETERMINED BY A

JURY BE TRIED BY A JURY.


Respectfully submitted,
Gesk Moritz, LLC


/s/ Jonathan M. Gesk
Jonathan M. Gesk, Esquire
PA ID No. 205678
Attorney for Plaintiff
14 E. Main Street
Carnegie, PA 15106
(412) 429 – 9100
jgesk@gesklaw.com


Barth & Associates


/s/ Steve M. Barth
Steve M. Barth, Esquire
Attorney for the Plaintiff
PA ID No. 89395
P.O. Box 23627
Pittsburgh, PA 15222
(412) 779 – 3806
smbassociates@gmail.com


Dated:  January 23, 2017